# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES BERNARD ARMSTRONG, JR., | : <br> : <br> : |
| v. | : CIVIL ACTION <br> : NO. 15-1520 <br> : |
| UNITED STATES OF AMERICA, | : CRIMINAL ACTION <br> : NO. 11-89 |

## <u>M E M O R A N D U M</u>

**STENGEL, J.**                                                                                  August 31, 2018

### I. INTRODUCTION

Petitioner James Armstrong Jr. requests that the court vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 due to the ineffective assistance of his trial counsel. Previously, in an April 2, 2018 order, I addressed Mr. Armstrong's motion for leave to file an amended § 2255 petition. I permitted four of his claims to proceed to briefing. Mr. Armstrong timely filed his § 2255 motion, and his claims are now ripe for decision.

### II. BACKGROUND AND PROCEDURAL HISTORY

On September 4, 2012, a jury found Mr. Armstrong guilty of several drug charges and of possession of a firearm in furtherance of drug trafficking. (Doc. No. 101.) He was sentenced to 15 years in prison. (Doc. No. 178 ¶ 8.) Mr.

Armstrong appealed his conviction and sentence, and on January 26, 2015, the Third Circuit affirmed the judgment against him. (Doc. Nos. 137, 154.)

On August 4, 2015, Mr. Armstrong filed a pro se § 2255 petition requesting relief on seven grounds. (Doc No. 156.) The government filed its response on October 16, 2015. (Doc. No. 164.) On September 8, 2016, I appointed a federal defender to represent Mr. Armstrong, stating that the appointment was to submit "a counseled petition for writ of *habeas corpus* pursuant to § 2255." (Doc. No. 168.) Due to a conflict of interest with the federal defender, I appointed Mr. Armstrong's current counsel on October 25, 2016. (Doc. No. 170.) On October 27, 2016, after a telephone conference, I granted Mr. Armstrong's request to file a motion for leave to file a counseled, amended § 2255 petition. (Doc. No. 172.)

Mr. Armstrong filed his motion for leave to amend and his supporting brief on March 2, 2017. (Doc. Nos. 178, 179.) On April 20, 2017, the government filed its response, to which the petitioner replied on May 4, 2017. (Doc. Nos. 181, 182.) In an April 2, 2018 memorandum and order, I permitted four of Mr. Armstrong's claims to proceed to briefing. (Doc. Nos. 185, 186.) The petitioner subsequently filed his § 2255 motion on May 2, 2018, to which the government responded, and he replied. (Doc. Nos. 187, 188, 191, 192.) I will now address Mr. Armstrong's request for relief under § 2255.

### III. LEGAL STANDARD

Motions pursuant to 28 U.S.C. § 2255 allow federal prisoners to challenge convictions or sentences that violate the law. Okereke v. United States, 307 F.3d

117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a).

Section 2255(b) provides the procedure for reviewing the motion:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b).

The district court has discretion regarding whether to hold an evidentiary hearing on a prisoner's motion under § 2255. See Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989); see also 28 U.S.C. § 2255, R. 8(a). In

exercising that discretion, the court must decide whether the prisoner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d. Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41–42 (3d Cir. 1992)); see also Forte, 865 F.2d at 62.

**IV. DISCUSSION**

Mr. Armstrong requests relief under § 2255 based on several claims of ineffective assistance of his trial counsel. For the reasons set forth below, I find that he is not entitled to relief and an evidentiary hearing is not necessary.

The Sixth Amendment to the U.S. Constitution guarantees criminal defendants effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must prove the "performance" and "prejudice" prongs of Strickland:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors

4

>were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Courts examining whether counsel's performance was ineffective "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotations omitted).

Regarding the second prong, prejudice to the defendant, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Here, Mr. Armstrong has not established that his counsel's performance was deficient. Even if he could make such a showing, I find that he was not prejudiced by his counsel's conduct.

### A. Counsel's Allegedly Deficient Advice Regarding Plea Offer and Sentencing Exposure

Mr. Armstrong argues that his counsel was ineffective for providing insufficient advice regarding his sentencing exposure and whether he should accept the government's plea offer. (Doc. No. 188, at 6.)

The two-prong Strickland standard applies to advice of counsel during guilty plea discussions. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice prong, in the plea context, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. In guilty plea discussions, "counsel is required to give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'" Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013) (citing United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).

First, Mr. Armstrong argues that his counsel "should have recommended to enter a plea where there was no logical reason to pursue the trial course." (Doc. No. 188, at 10.) However, he does not provide evidence that his counsel didn't do exactly that, and he does not specifically articulate what more his counsel should have done. (Id. at 10.) While these omissions are not dispositive, they do not work in his favor. Further, there is no indication whatsoever that Mr. Armstrong's counsel recommended that he reject the plea offer or go to trial.

Mr. Armstrong further argues that his counsel should have recommended that he take a plea in light of the government's strong evidence, including "that

6

Mr. Armstrong had cooperated with law enforcement at the time of his arrest, had consented to a search of his residence that uncovered a variety of incriminating evidence, as well as provided self-incriminating statements." (Id.) Additionally, there were "cooperating witnesses who identified Mr. Armstrong as a narcotic supplier, harmful evidence seized from Mr. Armstrong's phone and significant independent physical evidence." (Id.) While this evidence would be reason for Mr. Armstrong to seriously consider a plea, Mr. Armstrong himself presumably knew all of this at the time he rejected the government's offer—at the very least, he has not provided reason for me to believe otherwise.

Mr. Armstrong summarizes his argument by stating that "[i]t is dubious that Mr. Armstrong was properly provided with the strength of the government's case." (Id. at 10–11.) "Dubious" falls far short of Strickland's standard for ineffective assistance, which requires that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Mr. Armstrong has not demonstrated any such grave errors by his counsel.

Second, Mr. Armstrong argues that his trial counsel did not apprise him of his sentencing exposure or review the application of the U.S. Sentencing Guidelines. (Id. at 12.) Specifically, he argues:

> Prior to trial, he provided no advice to Mr. Armstrong regarding his true sentencing exposure if he lost at trial compared to the benefits in entering a plea. Furthermore, he was never advised by trial counsel of the import of losing acceptance of responsibility, the possibility of safety valve eligibility, and a true worst case sentencing scenario by

7

his decision to proceed to trial.

(Id. at 13.)

In response to this argument, the government states that Mr. Armstrong "cannot establish deficient performance and prejudice because all of this information was reviewed with him *on the record* prior to trial." (Doc. No. 191, at 8.)

I agree with the government that the information reviewed on the record prior to trial is more than sufficient to show that Mr. Armstrong had ample information upon which he could decide whether to plea. Therefore, I find that Mr. Armstrong cannot meet the prejudice prong of Strickland because the outcome of the plea process was not impacted by his counsel's allegedly deficient performance. See Hill, 474 U.S. at 58; Shotts, 724 F.3d at 376.

Before trial, on August 28, 2018, the government asked to convey its plea offer on the record. (Doc. No. 145, at 3.) And it did so thoroughly and clearly:

> The offer that was made yesterday was that he would enter a plea of guilty to criminal conspiracy to distribute and possess with intent to distribute marijuana and cocaine, the offense that carries no mandatory term of imprisonment, it carries a statutory maximum of 20 years, that the parties would recommend to the court that the amount of marijuana attributable to the defendant is more than a thousand kilograms and that the amount of cocaine hydrochloride attributable to him is 140 grams. . . .
> The government would dismiss Count 2 of the indictment, which is the substantive offense of distribution and possession with intent to distribute a thousand kilograms and more of marijuana and 500 grams and more of cocaine hydrochloride. The government would dismiss Count 3, which is the 924(c) count, possession of a firearm, firearm in furtherance of drug trafficking.
> I wanted to make sure that Mr. Armstrong realized that, first

> of all, that plea offer involves no mandatory sentences, simply guideline sentences. If he is convicted of any one of the three offenses and lesser included offenses of Count 1 and Count 2, they all carry mandatories. Count 3 carries a mandatory that must be served consecutively to any other sentence imposed.
>
> In addition to that, of course, substantially increasing the defendant's exposure in terms of penalties, it also means that he – the court cannot sentence him to less than the mandatories. He loses his opportunity to argue through counsel that there are factors about his background and his history that warrant a lesser sentence than what the guidelines would otherwise call for. So that the court would – basically he would be sentenced to the mandatory, which, in this case, could be 15 years or more.
>
> It also means that he would lose any credit for acceptance of responsibility. Acceptance of responsibility, of course, means that the guidelines further – his guideline sentence is further reduced. I had offered – the offer yesterday was that the credits for acceptance of responsibility would be the two-point credit rather than the three-point credit. The three-point credit only applies if the defendant elects to plead guilty well in advance of trial.

(Doc. No. 145, at 3–5.)

Following this summary of the plea offer and the penalties at stake, I asked whether the defendant heard everything that was said. (Id. at 5.) The defendant indicated that he did not "particularly understand" and that it's "a foreign language" to him. (Id.) To rectify this lack of understanding, his attorney requested time to meet with him in private to discuss the "ramifications" of the plea offer. (Id.)

At this point, the Assistant United States Attorney prosecuting the case offered to meet with the defendant and his trial counsel to review the terms of the offer. (Id.) After a brief discussion in open court, I called a recess to allow trial counsel to inform the defendant about the plea offer and for the AUSA to be

9

available to them for any questions that might come up. (Id. at 10.) Court reconvened 25 minutes later. (Id.)

When the parties returned, the AUSA explained that "we have had an opportunity to discuss the plea offer with Mr. Armstrong and with his attorney. . . . [M]y understanding from [defense counsel] is that his client does not intend to accept the government's offer and that he understands the ramifications of the offer." (Id. at 10–11.) There was no indication to the contrary from the defendant or defense counsel. (Id. at 11.)

Given all of this, it is clear that Mr. Armstrong had ample information upon which to make an informed decision about whether to accept the government's plea offer. The AUSA offered a complete, accurate, and straightforward recitation of the relevant considerations, on the record. Mr. Armstrong's attorney then met with him for 25 minutes to further explain, and the AUSA was present to answer any questions he may have. Notably, the AUSA did most of the talking on the record. However, Mr. Armstrong's attorney's relative quietness, when full and accurate information was presented by the government, does not render his performance deficient. His client was provided with the necessary information; he was permitted ample time to discuss that information with his client; and the AUSA even made herself available to answer questions.

Taking all of this into consideration, I find that Mr. Armstrong has not established the performance prong of Strickland. He has not demonstrated that the outcome of the plea process would have been different but for his counsel's

allegedly deficient performance nor that he lacked information to make a "reasonably informed decision." See Hill, 474 U.S. at 58; Shotts, 724 F.3d at 376. Further, he has not shown that his counsel's performance was deficient in any way that would even begin to approach the stringent Sixth Amendment standard.

### B. Counsel's Failure to Object to Allegedly Prejudicial and Expert Testimony

Mr. Armstrong makes two distinct arguments regarding his counsel's alleged mishandling of testimony by DEA Agent Mark O'Donnell. (Id. at 14–19.) First, he argues that his attorney did not make a hearsay objection when Mr. O'Donnell testified regarding information the he gathered from reports and documents. Mr. Armstrong makes this argument as to **[1]** lab reports that noted the presence and weight of marijuana, (Id. at 16 (citing Doc. No. 122, at 10)), **[2]** lab reports showing that a scale found in his residence tested positive for cocaine residue, (Id. (citing Doc. No. 147, at 491)), and **[3]** Fed Ex records documenting deliveries of marijuana, (Id. at 17 (citing Doc. No. 147, at 478)).

In examining trial counsel's performance under Strickland, I must view the circumstances from his perspective at the time of trial. See 466 U.S. at 689. Further, I must do so with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that his choices may well have been made in line with a "sound trial strategy." Id. Here, trial counsel could easily have chosen not to object to hearsay testimony regarding the lab reports and Fed Ex records because such records are commonplace in cases of

11

this nature, and perhaps because he did not disagree with the truth of the information presented. That would be a logical decision, and one that would support a fair and efficient trial.[1]

Second, Mr. Armstrong argues that Agent O'Donnell testified as both a fact witness and an expert witness without being certified as an expert. (Id.) Mr. Armstrong takes issue with the following portions of testimony: **[1]** Agent O'Donnell's testimony that he identified cocaine by smell, (Id. (citing Doc. No. 147, at 490)), **[2]** his testimony regarding the weights of the 131 packages seized and the method he used to determine the weights, (Id. (citing Doc. No. 147, at 499–500)), **[3]** his allegedly improper opinion "on the ultimate issue involving the § 924(c) count," (Id. (citing Doc. No. 147, at 531)), and **[4]** his testimony regarding text messages that he believed was "coded related to drug trafficking," (Id. (citing Doc. No. 147, at 518)).

Mr. Armstrong argues that he was prejudiced by Agent O'Donnell's testifying both as a lay person and as an expert without being qualified as an expert. (Id. at 18.) "There was no objection and no request for any cautionary instructions to the jury distinguishing what testimony is lay testimony and what is being offered as expert testimony." (Id.)

The government responds that none of the testimony the defendant cites qualifies as expert testimony and that Agent O'Donnell's testimony regarding the

---

[1] Further, the government argues, and I agree, that the Fed Ex records would likely be admissible under Federal Rules of Evidence 803(6) and 902(11).

12

§ 924(c) count does not speak to the ultimate issue in the case. I agree.

Under Rule 701 of the Federal Rules of Evidence, a lay witness can offer an opinion on something that is "rationally based on the witnesses perception." Fed. R. Evid. 701(b). As the government points out, the advisory committee's note after Rule 701 states that a lay witness may "testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established." Fed. R. Evid. 701.

Here, Agent O'Donnell established that he can identify cocaine by its "chemical odor" because of his experience as a DEA agent who has carried out many cocaine investigations. (Doc. No. 147, at 490.) With that, he provided the proper background information as a foundation for his ability to perceive the smell of cocaine. Therefore, this is proper lay testimony based on personal knowledge by a DEA agent.

Similarly, as a lay witness, Agent O'Donnell can testify to the weights of the packages seized. The mathematics he described in the portion of the record cited by Mr. Armstrong describes a process using basic arithmetic to approximate the total weight of marijuana in the 131 packages. (Doc. No. 147, at 499–500.) Agent O'Donnell was not acting as an expert when he offered that testimony.

Regarding whether Agent O'Donnell offered an improper opinion "on the ultimate issue involving the § 924(c) count," I find that he did not. Mr. O'Donnell stated, "[y]es, it is," in response to a question asking whether possessing a gun in furtherance of drug trafficking is illegal. (Doc. No. 147, at 531–32.) He did not

13

testify to the ultimate issue by opining on Mr. Armstrong's guilt or innocence of this crime or even an element thereof.

Additionally, Mr. Armstrong does not dispute that possessing a gun in furtherance of drug trafficking is, in fact, illegal. Agent O'Donnell's statement is no more inflammatory than the recitation of the law that a judge provides to a jury, and there is no way it could have prejudiced Mr. Armstrong, especially in light of the strong evidence against him.

Regarding Agent O'Donnell's testimony about text messages that he believed were "coded related to drug trafficking," I find that this is not an improper expert opinion. First of all, Agent O'Donnell did not even say what the words or phrases were that he believed were "coded." (See Doc. No. 147, at 518). He stated that it was simply his own "interpretation" that the text messages discussed drug trafficking. This is a fairly mundane statement of opinion, and an insignificant moment in his testimony. This statement neither presents an expert opinion nor prejudices the defendant in light of the strong evidence against him.

Lastly, Mr. Armstrong's argument that his counsel's cumulative errors at trial amount to ineffective assistance also fails for the reasons discussed above regarding his individual claims. In conclusion, Mr. Armstrong is not entitled to relief under § 2255 because his counsel was not ineffective. Further, I will deny Mr. Armstrong's request for a hearing because the record conclusively shows that he is not entitled to relief.

An appropriate order follows.