**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-89** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **JAMES BERNARD ARMSTRONG, JR.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant James Bernard Armstrong, Jr., moves, through appointed counsel, for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 200). Armstrong asks the court to reduce his sentence to time served based on his medical condition and his concern regarding potential spread of the COVID-19 virus[1] at the Schuylkill Federal Correctional Institution ("FCI Schuylkill") where he is currently incarcerated. The government opposes compassionate release. For the reasons that follow, we will deny Armstrong's motion.

## I.   Factual Background & Procedural History

In March 2011, a grand jury returned a three-count indictment (Doc. 1) against Armstrong and one codefendant. Armstrong's codefendant pled guilty, and in March 2012, the grand jury returned a superseding indictment (Doc. 56)

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

against Armstrong alone.  That indictment charged Armstrong with conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute 500 grams and more of cocaine hydrochloride and 1000 kilograms and more of marijuana (Count 1); manufacturing, distributing, and possessing with intent to distribute the same controlled substances in the same quantities (Count 2); and possessing, using, and carrying firearms in furtherance of drug trafficking (Count 3).  (See id.)  After a four-day trial, the jury found Armstrong guilty on all counts. (Doc. 101).

The presentence report calculated a Guidelines range of 188 to 235 months on Counts 1 and 2 (both of which carried 10-year statutory mandatory minimum terms) and 60 months on Count 3 (which carried a 5-year statutory consecutive mandatory minimum term).  (PSR ¶¶ 62-64).  At sentencing, the court noted that Armstrong had been engaged in "a serious and lengthy and protracted pattern" of drug distribution, that he was responsible for trafficking more than $2.5 million worth of drugs, and that "he was very involved in a leadership and managing position in this drug enterprise."  (Sent. Tr. 10:2-17).  The court juxtaposed the seriousness of the offense conduct with the fact that Armstrong had otherwise been a law-abiding citizen with a steady employment history and that he had committed this offense—his first—"for purely economic reasons."  (Id. at 10:24-11:22).  After balancing the Section 3553(a) factors, the court[2] varied downward to

---

[2] Judge Lawrence F. Stengel sat by designation in the Middle District and presided over the trial, sentencing, and posttrial stages of this case.  Judge Stengel has since retired, and the case was reassigned to the undersigned judicial officer on May 26, 2020.

impose the aggregate mandatory minimum term of 180 months' imprisonment. (Doc. 134).

Armstrong appealed his convictions to the Third Circuit Court of Appeals. (Doc. 137). The Third Circuit affirmed on both grounds raised, see United States v. Armstrong, 591 F. App'x 169 (3d Cir. 2015) (nonprecedential), and the Supreme Court of the United States denied *certiorari*, see Armstrong v. United States, 135 S. Ct. 2391 (2015) (mem.). This court also denied Armstrong's subsequent motion to vacate, set aside, or correct his convictions pursuant to 28 U.S.C. § 2255, (see Docs. 185-86), a decision the Third Circuit affirmed earlier this year, see United States v. Armstrong, 799 F. App'x 116 (3d Cir. 2020) (nonprecedential). Armstrong is currently housed at FCI Schuylkill, with a projected release date of May 8, 2026. See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "69882-067") (last visited July 23, 2020).

Armstrong filed a *pro se* motion for compassionate release on May 26, 2020. (Doc. 200). The next day, we appointed the Federal Public Defender to determine whether Armstrong may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf. (Doc. 201). On June 22, 2020, Armstrong wrote the warden at FCI Schuylkill and asked the warden to consider seeking compassionate release on his behalf. (See Doc. 207-2). Appointed counsel filed a brief in support of Armstrong's *pro se* motion on July 13, (Doc. 202), and we promptly implemented an expedited briefing schedule, (Doc. 205). While the motion was being briefed, the warden at FCI Schuylkill denied Armstrong's internal request that the BOP seek

compassionate release on his behalf.  (See Doc. 207-2).  Armstrong's motion is now

fully briefed and ripe for review.  (See Docs. 202, 207, 208).

## II.   **Discussion**

Armstrong asks the court to reduce his sentence to time served pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub.

L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing

court to reduce a term of imprisonment if the court finds, after consideration of the

Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can

move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A).

But before a defendant can move the court directly, he must either "fully exhaust[]

all administrative rights to appeal a failure of the [BOP] to bring a motion on [his]

behalf" or wait for 30 days to lapse from the warden's receipt of a request that the

BOP file such a motion.  Id.  The warden denied Armstrong's June 22 request to

bring a motion on his behalf within 30 days of receipt.  (See Doc. 207-2).  In its July

17 opposition brief, the government took the position that, because 30 days had not

yet passed from the date the warden received Armstrong's request, the court could

not entertain his motion.  (See Doc. 207 at 14-15).  Ostensibly recognizing that its

argument would become moot five days later, the government also addressed the

merits of Armstrong's motion in the alternative.  (Doc. 207 at 15-21).  We will

therefore turn to the merits of Armstrong's motion.[3]

---

[3] We disagree with the suggestion that a prisoner satisfies the statutory exhaustion requirement by simply waiting 30 days after submitting a request to the warden to file a motion in the sentencing court.  We have previously held that, should a warden respond to a request to bring a motion for compassionate release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C. § 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner "must fully exhaust the warden's denial within the BOP before the court can entertain his motion."  See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases).  We have no evidentiary indication that Armstrong has done so.  See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020).  Courts are divided on whether Section 3582(c)(1)(A)'s exhaustion provision is a jurisdictional requirement that cannot be waived or forfeited by the government or whether it is a mandatory claim-processing provision subject to waiver and forfeiture.  Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, ___ F. Supp. 3d ___, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer, No. 18-CR-00783-2, ___ F. Supp. 3d ___, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020) (same); United States v. Haney, No. 19-CR-541, ___ F. Supp. 3d ___, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No. 3:12-CR-00115-RCJ, ___ F. Supp. 3d ___, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441, ___ F. Supp. 3d ___, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same).  Although not specifically raised by the parties, the court has a continuing obligation to consider questions of subject-matter jurisdiction sua sponte.  See Fort Bend County v. Davis, 587 U.S. ___, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)).  However, we need not resolve the jurisdictional question in this case.  Assuming jurisdiction arguendo, Armstrong has not established that a reduction in sentence under Section 3582(c)(1)(A)(i) is warranted.  See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing, inter alia, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and holding that when a jurisdictional limitation "has a statutory provenance," rather than a constitutional one, courts may assume jurisdiction arguendo).

### A.      Extraordinary and Compelling Reasons

Armstrong contends that his medical condition and resulting vulnerability to serious complications from COVID-19 establish extraordinary and compelling reasons to grant compassionate release.  Armstrong has Graves disease (which he describes as "an immune system disorder of the thyroid"), underwent an ablation of the thyroid in 2015, and has been diagnosed with prediabetes.  (See Doc. 202 at 1; Doc. 204 at 4).  He asserts that his medical condition may place him at higher risk for severe illness from COVID-19, that this risk is amplified in the prison setting, and that immediate release is the only way to guard against this risk and protect his health.  (See Doc. 202 at 1-2, 6).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[4]  See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially

---

[4] We recognize that this policy statement has not been amended since passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover." Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment.  Id. at cmt. n.1(B).  The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above.  Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release.  Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Armstrong are those concerning prisoners with a "debilitated medical condition."  FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover."  Id.  Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."  Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria.  Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions.  In <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread."  <u>Raia</u>, 954 F.3d at 597.[5]  Over the past few months, district courts in the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release.  <u>See</u> <u>Ndir v. Doll</u>, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); <u>D.M. v. Barr</u>, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); <u>United States v. Anderson</u>, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context).  In other words, something more is required.

---

[5] The Third Circuit in <u>Raia</u> held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile.  <u>See</u> <u>Raia</u>, 954 F.3d at 596-97.  Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*.  We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

Armstrong asserts that his medical condition and the presence of the COVID-19 virus within FCI Schuylkill supply the requisite "something more." The Centers for Disease Control and Prevention ("CDC") recently updated their guidance concerning who is at unique risk for severe illness from COVID-19.  See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 17, 2020).  As pertains to Armstrong, the guidance provides that individuals with Type 1 diabetes "might be at increased risk" from COVID-19, and that individuals with Type 2 diabetes "are at increased risk," but says nothing of individuals who are prediabetic.  Id.  Although the CDC's lists do not explicitly identify individuals with Graves disease as a medically vulnerable population, they do include individuals in an "immunocompromised state . . . from . . . immune deficiencies."  Id.  We will assume for purposes of our analysis that Armstrong falls into this latter category and qualifies as a person who "might be" at higher risk of severe complications from COVID-19.[6]

We are not unsympathetic to Armstrong's concerns, or to any medically vulnerable prisoner's concerns, regarding COVID-19.  But we do not believe that

---

[6] We note for Armstrong's benefit that the American Thyroid Association has said that "there is no indication that patients with autoimmune thyroid disease are at greater risk of getting COVID-19 or of being more severely affected should they acquire the COVID-19 infection."  *Novel Coronavirus (COVID-19) and the Thyroid: Frequently Asked Questions*, AM. THYROID ASS'N, https://www.thyroid.org/covid-19/coronavirus-frequently-asked-questions/#hypothyroidism (last visited July 22, 2020).

his ailments, under the circumstances, represent extraordinary and compelling reasons justifying compassionate release.  As of this writing, the threat within Armstrong's institution is minimal.  BOP statistics identify only one positive prisoner at FCI Schuylkill.  <u>See</u> *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated July 22, 2020).  According to the government, this individual self-surrendered to FCI Schuylkill on June 29, 2020; informed prison staff that he had recently tested positive; and was immediately placed in medical isolation.  (Doc. 207 at 9 n.1).  Thus, he has had no contact with other prisoners.  (<u>Id.</u>)  The BOP further reports that 102 prisoners at FCI Schuylkill have tested negative, with four tests still pending.  <u>See</u> <u>id.</u> (select "Learn more about the data and view individual facility stats").

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks.  It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services.  <u>See</u> *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov /coronavirus/covid19_status.jsp (last visited July 22, 2020).  Prisoner movement between facilities has been "suspended with limited exceptions."  <u>Id.</u>  Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  <u>See</u> <u>id.</u>  The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)— recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES)

Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to home confinement. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. The BOP reports that it has increased use of home confinement significantly, releasing an additional 7,042 prisoners in the past four months. Id. (last updated July 22, 2020, 3:00 p.m.). We therefore have no objective basis to find that Armstrong is at imminent risk of being exposed to or contracting the COVID-19 virus.

We also have no reason to believe that the BOP cannot adequately treat Armstrong's medical condition. Armstrong's counsel has supplied just four pages of medical records from Armstrong's nearly seven-year tenure in the federal prison system. (See Doc. 204). From those records, we can glean only a lack of abnormal findings. (See id. at 3). There is simply no support for the intimation that the BOP is not equipped to treat Armstrong or has been inadequately treating him so far.

The information available to the court suggests that the BOP is cognizant of and attentive to Armstrong's medical needs, that there is not a strong likelihood that he will be exposed to the COVID-19 virus at FCI Schuylkill, and that the BOP is working hard to prevent such exposure from happening. On these facts, we cannot conclude that the mere presence of the COVID-19 virus at FCI Schuylkill—whether on its own or in combination with Armstrong's medical condition—is an "extraordinary and compelling" reason for release.

### B.      Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances

exist, our analysis must still be informed by the Section 3553(a) factors.[7]  See 18

U.S.C. § 3582(c)(1)(A).  Accounting for good time, Armstrong still has almost six

years remaining on his 15-year sentence.  His crimes were serious, with all counts

triggering a mandatory minimum term of imprisonment.  He trafficked substantial

quantities of cocaine hydrochloride and marijuana.  And he was a leader within the

drug-trafficking organization.  Moreover, Armstrong's sentence already reflects a

considerable downward variance of more than 60 months from the bottom end of

the aggregate Guidelines range.  We commend Armstrong's good behavior while

incarcerated.  (See Doc. 202 at 6).  But, on balance, the Section 3553(a) factors

support leaving Armstrong's existing sentence intact.

---

[7] The Section 3553(a) factors are (1) "the nature and circumstances of
the offense and the history and characteristics of the defendant"; (2) "the need
for the sentence imposed . . . to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; . . . to afford
adequate deterrence to criminal conduct; . . . to protect the public from further
crimes of the defendant; and . . . to provide the defendant with needed educational
and vocational training, medical care, or other correctional treatment in the most
effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence
and sentencing range recommended by the United States Sentencing Guidelines;
(5) pertinent policy statements issued by the United States Sentencing Commission;
(6) "the need to avoid unwarranted sentencing disparities" among similarly situated
defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

III.    **<u>Conclusion</u>**

For all of these reasons, the court will deny Armstrong's motion (Doc. 200) for

compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

Our denial will be without prejudice to Armstrong's ability to refile the motion if,

for example, he experiences a serious deterioration of his physical health.  An

appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 23, 2020